UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LENA MACIAS, | Case No. 19-CV-00728-LHK |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| GAPIR FASAIL, et al., | Re: Dkt. No. 56 |
| Defendants. | |

Plaintiff Lena Macias filed this action for violations of the Americans with Disabilities Act ("ADA") and several California statutes. ECF No. 1 ("Compl."). Before the Court is Plaintiff Lena Macias's ("Plaintiff") renewed motion for default judgment against Defendants Gapir Fasail ("Fasail") and Pamela Chau ("Chau"). ECF No. 56. Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for default judgment.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff, a resident of San Jose, California, suffers from lupus, severe arthritis, spinal stenosis, and diabetes. ECF No. 1 ("Compl.") ¶ 6. Plaintiff uses a walker and a wheelchair for mobility. *Id*. In this case, Plaintiff alleges that architectural barriers exist at A Bite of Wyoming

restaurant in San Jose, California ("the Restaurant") that violate Plaintiff's rights under the ADA and several California statutes. *Id.* ¶¶ 9–13. Plaintiff alleges that "[t]he Restaurant and its facilities are 'places of public accommodation' as defined under Title III of the ADA . . . and California civil rights laws." *Id.* ¶ 9. Plaintiff alleges that Defendants Fasail, Chau, and Somora, Inc. ("Somora") are liable as "the owners, operators, lessors, and/or lessees" of the Restaurant. *Id.* ¶ 7.

Plaintiff alleges that she "has been a frequent patron to the Restaurant and has been there around at least 10 times" between February 2018 and February 2019. *Id.* ¶ 11. Plaintiff alleges that, during her visits, "Plaintiff persistently encountered barriers, structural in nature, to her full and equal access to the Restaurant's goods and service." *Id.* Specifically, "Plaintiff was unable to navigate in her wheelchair inside of the Restaurant because the interior pathway is crowded with tables and chairs." *Id.* "Consequently, Plaintiff was never able to use the customer restroom despite needing to on multiple occasions." *Id.* "Defendants also fail to provide any accessible seating at the counter or a signature surface at the cashier counter." *Id.* Plaintiff alleges that she "suffered difficulties, discomfort, and embarrassment during her visits because of the architectural barriers and has been deterred on a number of occasions from dining at the Restaurant." *Id.*

Plaintiff further alleges that Plaintiff's counsel "had a CASp-certified access consultant do an informal investigation of the Restaurant's premises." *Id.* ¶ 12. Plaintiff's expert determined that the Restaurant "was also inaccessible in multiple other ways," including the following: (1) the tow away sign has no information; (2) there is no path of travel from the sidewalk due to parking; (3) the ADA parking lines, access lines, "no parking," and ISA are faded; (4) the front door is heavy to operate and closes fast; (5) the ADA table has no marking and does not provide a 30 inch wide clear space; (6) the interior path of travel is tight; and (7) the bathroom provides multiple barriers and is not considered accessible. *Id.*

## B. Procedural History

On February 8, 2019, Plaintiff filed the instant case against Defendants Fasail, Chau, and Somora. Compl. Plaintiff brings four claims: (1) violation of the ADA, 42 U.S.C. § 12101, *et seq.*; (2) violation of Health & Safety Code § 19955 *et seq.*; (3) violation of the Unruh Civil Rights Act

1  ("UCRA"), Cal. Civ. Code § 51 *et seq.*; and (4) violation of the Disabled Persons Act, Cal. Civ.

2  Code § 54 *et seq. Id.* ¶¶ 14–35.

3      According to Plaintiff, Fasail and Chau were served with the summons and complaint at

4  3:26 p.m. on February 13, 2019 by leaving the summons, complaint, and associated paperwork

5  with Gloria Reyes, the "Person in Charge Of Office," at Burrito Express, located at 2435

6  Telegraph Avenue in Oakland, California, and by subsequently mailing the documents to Fasail

7  and Chau at that address. ECF No. 13-1 at 2-3; ECF No. 13-3. The process server's "Declaration

8  of Diligence" indicated that the process server tried only once to serve Fasail and Chau personally

9  before effecting substitute service. *Id.*

10      Plaintiff attempted to serve Somora by serving Ignascio Camarena, a "Person Authorized

11  to Accept Service of Process," by leaving the summons, complaint, and associated documents

12  with Kathy Nguyen, the "Person in Charge of Office," at 111 N. Market Street, Suite 300, San

13  Jose, California 95113, and by subsequently mailing copies to Mr. Camarena at the same address.

14  ECF No. 13-4. The process server's "Declaration of Diligence" indicates that he effected

15  substitute service on Mr. Camarena/Ms. Nguyen on February 12, 2019, after learning that the

16  "Subject [was] not in" at the business named "Patane Gumberg Avila, LLP" at the same location,

17  date, and time. *Id.* A Statement of Information filed with the California Secretary of State on

18  March 28, 2016, identified Mr. Camarena as agent for service of process for Somora, but the

19  address listed was Camarena Law Office, 95 S. Market Street, Suite 300, San Jose, California

20  95113, a different address than the one at which Plaintiff purported to serve Mr. Camarena/Ms.

21  Nguyen. ECF No. 13-6. Mr. Camarena, who identified himself as an attorney representing

22  Somora, communicated with Plaintiff's counsel by email on March 21, 2019. ECF No. 13-5.

23      None of the Defendants initially filed an answer or response to the Complaint. On July 9,

24  2019, the Clerk of Court entered defaults against all three Defendants. ECF No. 10. On October

25  23, 2019, Plaintiff filed a motion for default judgment. ECF No. 13. On November 20, 2019,

26  Somora filed an opposition to the motion that challenged whether service was valid.  ECF No. 16.

27  Plaintiff filed a reply on November 21, 2019. ECF No. 17.

28

3

On January 31, 2020, United States Magistrate Judge Susan van Keulen filed an order for reassignment to a district court judge and a report and recommendation that recommended denying Plaintiff's motion for default judgment based on service deficiencies. ECF No. 18. Judge van Keulen determined that Plaintiff failed to properly serve Fasail, Chau, and Somora. *Id.* at 5-7. On February 19, 2020, this Court adopted Magistrate Judge van Keulen's report and recommendation and denied Plaintiff's motion for default judgment. ECF No. 20. The Court also noted that under Federal Rule of Civil Procedure 4(m), Plaintiff was required to serve a summons and complaint on all Defendants within 90 days of filing the complaint. *Id.* at 2. That deadline had expired on May 9, 2019, more than nine months before the Court's February 19, 2020 order. Accordingly, the Court also issued an order to show cause as to why the case should not be dismissed for failure to prosecute. *Id.*

On February 19, 2020, Plaintiff filed a response to the Court's order to show cause and acknowledged that Plaintiff failed to properly serve Defendants but requested, "[i]n light of Plaintiff's good faith attempt to properly serve defendants within the deadline under [Rule] 4(m)," to continue the service deadline. ECF No. 21 at 2-3. The Court vacated the entry of default as to all Defendants and gave Plaintiff until March 25, 2020 to properly serve Defendants and to file proofs of service by that date. ECF No. 22 at 1-2. On March 24, 2020, the day before the deadline to serve Defendants and file proofs of service, Plaintiff filed an administrative motion asking the Court for a thirty-day extension to properly serve Defendants and file proofs of service. ECF No. 27. In light of the ongoing COVID-19 pandemic, the Court granted Plaintiff's request for a thirty-day extension. ECF No. 28.

Between February 2020 and May 2020, Plaintiff's counsel ran multiple searches on LexisNexis Public Records search and social media, hired multiple professional process servers, directed process servers to conduct a "skip trace" of Fasail to locate his whereabouts, utilized a public records database used by law enforcement agencies and private investigators, used LexisNexis phone databases to identify other possible addresses for Fasail and Chau, had process servers attempt to serve Fasail and Chau at multiple locations in Oakland and San Leandro, and

attempted service by mail at those various locations. ECF No. 33-1 ¶¶ 8(a)-(n). At one location alone, a process server made 10 separate attempts to serve Fasail. *Id.* ¶ 8(d); ECF No. 33-7 at 4 (detailing 10 service attempts from March 30, 2020 to April 13, 2020). That process server also made 19 separate attempts to serve Chau. ECF No. 33-1 ¶ 8(d); ECF No. 33-7 at 2 (detailing 19 service attempts from March 4, 2020 to April 13, 2020).

On April 22, 2020, the parties filed a Joint Case Management Statement in which Plaintiff stated that "Plaintiff has been unable to effectuate service on Defendants Gapir Fasail and Pamela Chau. Plaintiff's attempts to serve these defendants are ongoing. Plaintiff intends to file an application to serve by publication if by April 30, 2020 she has not perfected service." ECF No. 31 at 2. On April 23, 2020, the Court permitted "Plaintiff until April 30, 2020 to file a motion to serve Defendants Fasail and Chau by publication." ECF No. 32. On April 30, 2020, Plaintiff filed a motion to serve Fasail and Chau by publication. ECF No. 33.

On May 19, 2020, the Court granted Plaintiff's motion to serve Fasail and Chau by publication. ECF No. 35. Because the addresses Plaintiff had obtained for Fasail and Chau were almost exclusively in Oakland, the Court concluded that the *East Bay Times/Oakland Tribune*, a newspaper in Oakland, was most likely to give actual notice to Fasail and Chau. *Id.* at 6. The Court ordered that publication be made in the *East Bay Times/Oakland Tribune* once a week for four weeks. *Id.* On June 12, 2020, Plaintiff filed a proof of service with a declaration stating that the summonses to Fasail and Chau had been published in the May 22, 2020; May 29, 2020; June 5, 2020; and June 12, 2020 issues of the *East Bay Times/Oakland Tribune*. ECF No. 39.

On January 14, 2021, Plaintiff and Somora filed a stipulation of dismissal. ECF No. 54. That same day, the Court granted the stipulation of dismissal. ECF No. 55. Accordingly, Fasail and Chau are the only remaining defendants in the instant case.

On July 10, 2020, the Clerk entered default as to Fasail and Chau. ECF No. 41. On February 8, 2021, Plaintiff filed the instant renewed motion for default judgment. ECF No. 56 ("Mot.").

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk, under Rule 55(a), has previously entered a party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.    DISCUSSION

### A.    Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must determine

United States District Court
Northern District of California

whether jurisdiction over the instant case exists.

The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction. For the Court to exercise personal jurisdiction over a defendant, the defendant must also have been served in accordance with Federal Rule of Civil Procedure 4. Accordingly, the Court then turns to service of process.

### 1. Subject Matter Jurisdiction

Here, Plaintiff brings this action, in part, pursuant to federal law. Specifically, Plaintiff brings a claim for violation of the ADA, 42 U.S.C. § 12101, *et seq*. Compl. ¶¶ 14–20. The Court has subject matter jurisdiction over Plaintiff's ADA claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Plaintiff also brings related state law claims, including claims for violation of Health & Safety Code § 19955 *et seq.*; violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.*; and violation of the Disabled Persons Act, Cal. Civ. Code § 54 *et seq.* Compl. ¶¶ 20– 35. Because these state law claims stem from the same underlying event as Plaintiff's federal claim— Defendants' ownership of a restaurant which allegedly does not permit access by people with disabilities such as Plaintiff — the Court has supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006) ("[F]ederal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case because they 'derive from a common nucleus of operative fact' as the federal claim.") (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *DiscoverOrg Data, LLC v. Bitnine Global, Inc*, 2020 WL 6562333, at *3 (N.D. Cal. Nov. 9, 2020) (concluding that the Court had subject matter jurisdiction where Plaintiff asserted federal claims and state law claims that

7

stemmed from the same underlying event as the federal claims). Therefore, the Court has subject matter jurisdiction over all of Plaintiff's claims. The Court next considers whether it has personal jurisdiction.

### 2. Personal Jurisdiction

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Personal jurisdiction over an out of state defendant is appropriate if the relevant state's long arm statute permits the assertion of jurisdiction without violating federal due process. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California's long arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). In the instant case, the Court concludes that

8

the exercise of general jurisdiction is appropriate.

General jurisdiction exists when a defendant is physically present or when a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (citation omitted). Here, Plaintiff alleges that Fasail and Chau are the real property owners of the non-ADA-compliant Restaurant at issue in the instant case, which is located in San Jose, California. *See* Compl. ¶ 7. On this basis, the Court finds that Defendants have "substantial" and "continuous and systematic" contacts with California that support the Court's exercise of general personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 801 (general jurisdiction exists where a defendant has "continuous and systematic general business contacts . . . that approximate physical presence in the forum state" (citations omitted)); *see also Golden West Veg, Inc. v. Bartley*, 2017 WL 2335602, at *4 (N.D. Cal. May 30, 2017) (finding Plaintiff established personal jurisdiction for purposes of default judgment by alleging that Defendant operated a sole proprietorship continuously in the state of California). Accordingly, Fasail and Chau are subject to this Court's general jurisdiction.

### 3. Service of Process

Finally, for the Court to properly exercise personal jurisdiction over a defendant, the defendant must have been served in accordance with Federal Rules of Civil Procedure. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote omitted)); *see also Pension Tr. Fund for Operating Eng'rs v. Kickin Enters.*, 2012 WL 6711557, at *3 (N.D. Cal. Dec. 20, 2012) ("[W]here entry of default judgment is requested, the Court must determine whether service of process was adequate.").

Service of a complaint in federal court is governed by Federal Rule of Civil Procedure ("Rule") 4. Rule 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). California Code of Civil Procedure § 415.50 provides that "[a] summons may be served by publication if upon affidavit it appears to the

9

satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that," as relevant here, "[a] cause of action exists against the party." Cal. Code Civ. Pro. § 415.50.

In the instant case, the Court authorized Plaintiff to serve Fasail and Chau by publication because Plaintiff met both requirements of Section 415.50. ECF No. 35. First, Plaintiff demonstrated reasonable diligence. *Id.* at 5–6. Between February 2020 and May 2020, Plaintiff's counsel ran multiple searches on LexisNexis Public Records search and social media, hired multiple professional process servers, directed process servers to conduct a "skip trace" of Fasail to locate his whereabouts, utilized a public records database used by law enforcement agencies and private investigators, used LexisNexis phone databases to identify other possible addresses for Fasail and Chau, had process servers attempt to serve Fasail and Chau at multiple locations in Oakland and San Leandro, and attempted service by mail at those various locations. ECF No. 33-1 ¶¶ 8(a)-(n). At one location alone, a process server made 10 separate attempts to serve Fasail. *Id.* ¶ 8(d); ECF No. 33-7 at 4 (detailing 10 service attempts from March 30, 2020 to April 13, 2020). That process server also made 19 separate attempts to serve Chau. ECF No. 33-1 ¶ 8(d); ECF No. 33-7 at 2 (detailing 19 service attempts from March 4, 2020 to April 13, 2020).

Courts have found that similar attempts to locate a defendant are sufficient to demonstrate "reasonable diligence" under § 415.50. *See Hernandez v. City of San Jose*, 2016 WL 6582048, at *2 (N.D. Cal. Nov. 7, 2016) (concluding that plaintiffs were entitled to service by publication because Plaintiffs "hired two professional process servers, requested information from the Santa Clara County Probation Department, searched social media platforms, and sought to verify [a defendant's] address using the Santa Clara County voter registration portal"); *Giorgio v. Synergy Mgmt. Grp., LLC*, 231 Cal. App. 4th 241, 248 (2014) (concluding that plaintiff showed reasonable diligence where plaintiff attempted to locate and serve the defendant through online searches, hiring two process servers, and attempting to send mail to defendant's only known address).

Second, Plaintiff established that "[a] cause of action exists against" Fasail and Chau. Cal. Civ. Pro. Code § 415.50. Specifically, Plaintiff alleged that Fasail and Chau are the real property

owners of the non-ADA compliant Restaurant at issue in the instant case. Compl. ¶ 7. Accordingly, Plaintiff established that causes of action exist against Fasail and Chau. *Id.* ¶¶ 14–35. Because Plaintiff met both requirements of Section 415.50, the Court authorized service by publication. ECF No. 35.

Section 415.50 permits service by publication "in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." Cal. Civ. Pro. Code § 415.50(b). Because the addresses Plaintiff had obtained for Fasail and Chau were almost exclusively in Oakland, the Court concluded that the *East Bay Times/Oakland Tribune*, a newspaper in Oakland, was most likely to give actual notice to Fasail and Chau. ECF No. 35 at 6. The Court ordered that publication be made in the *East Bay Times/Oakland Tribune* once a week for four weeks. *Id.* On June 12, 2020, Plaintiff filed a proof of service with a declaration stating that the summonses to Fasail and Chau had been published in the May 22, 2020; May 29, 2020; June 5, 2020; and June 12, 2020 issues of the *East Bay Times/Oakland Tribune*. ECF No. 39. Based on these facts, the Court concludes that Fasail and Chau have been properly served under Federal Rule of Civil Procedure 4(e)(1) and California Code of Civil Procedure § 415.50. Therefore, the Court properly exercises jurisdiction over Fasail and Chau.

### B. Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Fasail and Chau are proper, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against Fasail and Chau is warranted.

#### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. "A plaintiff who is denied a default judgment and is subsequently left without any other recourse for recovery has a basis for establishing prejudice." *Michael Grecco Prods., Inc. v. Enthusiast Gaming, Inc*, 2020 WL 7227199, at *6 (N.D. Cal. Dec. 8, 2020) (quoting *DiscoverOrg*, 2020 WL 6562333, at *5). Here, Plaintiff has established that Plaintiff will be prejudiced because Fasail and Chau have not participated in this

United States District Court
Northern District of California

litigation and Plaintiff would be without recourse to recover for the damages caused by Fasail and Chau. Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

### 2. Second and Third *Eitel* Factors: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the Complaint. Courts often analyze these two factors together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pled allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the Complaint together.

In the instant case, Plaintiff brings four claims against Fasail and Chau: (1) violation of the ADA, 42 U.S.C. § 12101, *et seq.*; (2) violation of Health & Safety Code § 19955 *et seq.*; (3) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.*; and (4) violation of the Disabled Persons Act, Cal. Civ. Code § 54 *et seq. Id.* ¶¶ 14–35. The Court addresses Plaintiff's ADA claims then Plaintiff's state law claims.

Title III of the ADA prohibits discrimination on the basis of disability within places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to state a claim under Title III of the ADA, Plaintiff must allege that: (1) she is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate a place of public accommodation; and (3) she was denied public accommodations by Defendants because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)). Additionally, "[t]o succeed on an ADA claim based on

architectural barriers, [Plaintiff] 'must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable. *Johnson v. Shahkarami*, No. 5:20-CV-07263-BLF, 2021 WL 1530940, at *4 (N.D. Cal. Apr. 19, 2021) (quoting *Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018)).

        In the instant case, Plaintiff alleges the necessary facts to establish her claim under the ADA. First, Plaintiff alleges that she is disabled within the meaning of the ADA. Specifically, Plaintiff alleges that she suffers from lupus, severe arthritis, spinal stenosis, and diabetes, and uses a walker and a wheelchair for mobility. Compl. ¶ 6. Second, Plaintiff alleges that Fasail and Chau are the owners of the Restaurant, and that "[t]he Restaurant and its facilities are 'places of public accommodation' as defined under Title III of the ADA . . . and California civil rights laws." *Id.* ¶¶ 7, 9. Third, Plaintiff alleges that several architectural barriers exist at the Restaurant. *Id.* ¶¶ 9–13. Specifically, Plaintiff alleges that "Plaintiff was unable to navigate in her wheelchair inside of the Restaurant because the interior pathway is crowded with tables and chairs." *Id.* ¶ 11. Plaintiff alleges that "[c]onsequently, Plaintiff was never able to use the customer restroom despite needing to on multiple occasions." *Id.* "Defendants also fail to provide any accessible seating at the counter or a signature surface at the cashier counter." *Id.* Plaintiff further alleges that Plaintiff's expert determined that the Restaurant "was also inaccessible in multiple other ways," including the following: (1) the tow away sign has no information; (2) there is no path of travel from the sidewalk due to parking; (3) the ADA parking lines, access lines, "no parking," and ISA are faded; (4) the front door is heavy to operate and closes fast; (5) the ADA table has no marking and does not provide a 30 inch wide clear space; (6) the interior path of travel is tight; and (7) the bathroom provides multiple barriers and is not considered accessible. *Id.* ¶ 12. Accordingly, the Court concludes that Plaintiff has adequately stated an ADA claim.

        As to Plaintiff's UCRA claim, the UCRA provides that a violation of the ADA is a violation of the UCRA. Cal. Civ. Code, § 51(f). In the instant case, Plaintiff's UCRA claim "arises from the same nucleus of operative facts as the ADA claim." *Johnson v. Medvill 1, LLC*, 2020 WL

Case No. 19-CV-00728-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

7696056, at *7 (N.D. Cal. Dec. 28, 2020). Because the Court concludes that Plaintiff has adequately stated an ADA claim, the Court also concludes that Plaintiff has adequately stated a UCRA claim.

However, in the instant motion for default judgment, Plaintiff fails to brief her remaining two state law claims for violation of Health & Safety Code § 19955 and violation of the Disabled Persons Act, Cal. Civ. Code § 54 *et seq.* Because Plaintiff fails to brief these claims, the Court denies default judgment to Plaintiff on these claims. *See Michael Grecco Prods., Inc.*, 2020 WL 7227199, at *7 (denying default judgment on claims that the plaintiff did not brief in the motion for default judgment).

Because the Court concludes that Plaintiff has adequately stated an ADA and a UCRA claim, the second and third *Eitel* factors weigh in favor of granting default judgment as to these claims.

### 3. Fourth *Eitel* Factor: The Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *Id.* Nonetheless, courts have found that this factor "presents no barrier to default judgment" as long as the potential damages were "proportional to the harm alleged." *See Liu Hongwei v. Velocity V Ltd.*, 2018 WL 3414053, at *8 (C.D. Cal. July 11, 2018) (finding that a request of $4,000,000 was justified); *United States v. Roof Guard Roofing Co.*, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) (holding that a request of over $1,000,000 was reasonable because the tax debt was substantiated with proof provided by the government).

Here, Plaintiff seeks to recover $4,000 in statutory damages and $16,473.88 in attorney's fees. For the reasons explained below, *infra* Section III(C), the Court concludes that an award of $4,000 in statutory damages and $15,416.38 in attorney's fees and costs is reasonable and proportional to the ADA and UCRA violations alleged here. The Court notes that, under the UCRA, Plaintiff is entitled to statutory damages of $4,000 for each time she was discriminated against. Cal. Civ. Code § 52(a). Plaintiff alleges that she went to the Restaurant and experienced its structural barriers on 10 occasions, which would entitle her to $40,000. Compl. ¶ 11. Regardless, Plaintiff is seeking only $4,000. Moreover, in other cases involving ADA and UCRA violations, courts have granted higher statutory damages and attorney's fees. *See, e.g.*, *Ridola v. Chao*, 2018 WL 2287668, at *15–*16 (N.D. Cal. May 18, 2018) (awarding $8,000 in statutory damages and $19,054.50 in attorney's fees on default judgment). Therefore, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Where a defendant fails to appear in an action, a court can infer "the absence of the possibility of a dispute concerning material facts." *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, 2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014). Fasail and Chau have failed to make an appearance in this case. The Court therefore takes the allegations in the Complaint as true and holds that there is no dispute over material facts. *Fair Hous. of Marin*, 285 F.3d at 906. Furthermore, the evidence provided by Plaintiff establishes that the Restaurant has structural barriers, which prevent equal access by people with disabilities. Compl. ¶¶ 9–13 (Plaintiff's allegations based on approximately 10 visits to the Restaurant in one year and the report of Plaintiff's expert, who is an expert in accessibility and architecture).

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. After Plaintiff made numerous efforts to personally serve Fasail and Chau, Fasail and Chau were properly served via service by publication. *See* Section III(A)(3), *supra* (explaining

why service was proper); ECF No. 35 (Order Authorizing Service by Publication). Nonetheless, Fasail and Chau have not made an appearance nor challenged the entry of default. Based on this record, nothing before the Court suggests that Fasail and Chau's failure to appear or litigate this case was the result of excusable neglect. In these circumstances, Fasail and Chau have no excusable reason to fail to appear in the instant case.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

Although the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Although Fasail and Chau were properly served, Fasail and Chau have not made an appearance nor challenged the entry of default. Thus, the likelihood of the case proceeding to a resolution on the merits is low. Accordingly, the Court finds that this factor slightly weighs against default judgment.

### 6. Balancing of *Eitel* Factors

In sum, the following six *Eitel* factors weigh in favor of default judgment as to Plaintiff's ADA and UCRA claims: (1) the possibility of prejudice, (2) the merits of Plaintiff's substantive claims, (3) the sufficiency of the Complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, and (6) excusable neglect. *See Eitel*, 782 F.2d at 1471–72. The last factor, the policy favoring decisions on the merits, weighs slightly against default judgment. The Court concludes that the last *Eitel* factor is outweighed by the other six factors that favor default judgment. *See, e.g.*, *Michael Grecco Prods., Inc.*, 2020 WL 7227199, at *6 (concluding that the last *Eitel* factor, which weighed slightly against default judgment, was outweighed by the first six *Eitel* factors, which weighed in favor of default judgment); *DiscoverOrg*, 2020 WL 6562333, at *8 (same). Thus, the Court concludes that default judgment is appropriate.

### C. Damages

Case No. 19-CV-00728-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

In the instant case, Plaintiff seeks the following relief: (1) statutory damages; (2) injunctive relief; and (3) attorney's fees and costs. The Court addresses each type of relief in turn.

**1. Statutory Damages**

Under the UCRA, a defendant that discriminates against a plaintiff is liable for damages. The Court can either award actual damages in a sum of up to three times actual damages, or statutory damages, which can be no less than $4,000 for each time the plaintiff was discriminated against. Cal. Civ. Code § 52(a). In order to be awarded damages, the plaintiff must demonstrate that she had knowledge of the barrier(s), and that she experienced difficulty, discomfort, or embarrassment. Cal. Civ. Code § 55.56.

In the instant case, Plaintiff seeks statutory damages of $4,000. Mot. at 10–11. As explained above, *supra* Section III(B)(2), Plaintiff has stated a UCRA claim and has adequately alleged that she had knowledge of the barriers at issue. Accordingly, the Court grants Plaintiff's request for $4,000 in statutory damages.

**2. Injunctive Relief**

Plaintiff seeks an injunction under the ADA and under the UCRA as to the barriers alleged in her complaint that were not resolved in Plaintiff's settlement with Somora. Mot. at 10. The Court considers in turn: (1) whether Plaintiff is entitled to an injunction under the ADA and (2) whether Plaintiff is entitled to an injunction under the UCRA.

Where a property does not comply with Title III of the ADA, the plaintiff is entitled to an "order to alter facilities to make such facilities readily accessible to and usable by individuals with

17

disabilities." 42 U.S.C. § 12188. In the instant case, as explained above, *supra* Section II(B)(2), Plaintiff has adequately alleged that the Restaurant does not comply with the ADA because the Restaurant has several architectural barriers. Compl. ¶¶ 9–13.[1] Specifically, as Plaintiff's expert noted in the inspection and as Plaintiff alleges in the Complaint, the following barriers exist: (1) the ADA parking lines are faded in violation of 1991 Standards § 4.6.3; (2) the ADA access lines are faded in violation of 1991 Standards § 4.6.3; and (3) the international symbol of accessibility is faded in violation of 1991 Standards § 4.6.4. *Id.* ¶ 12; Altwal Decl. Exh. 2. Because the Court concludes that Plaintiff has adequately alleged that the Restaurant has architectural barriers that violate the ADA, Plaintiff is entitled to an injunction to remedy these architectural barriers. 42 U.S.C. § 12188.

Furthermore, a plaintiff can seek an injunction under the UCRA where a property does not comply with the California Building Code, which sets forth accessibility requirements for public buildings. *Pickern v. Best W. Timber Cove Lodge Marina Resort*, 2002 WL 202442, at *9 (E.D. Cal. Jan. 18, 2002), *superseded in part on other grounds*, 194 F. Supp. 2d 1128 (E.D. Cal. 2002) ("Under the state statutes, a plaintiff can show either that the ADA was violated, or that the facility in question does not comply with the California Building Code requirements for disabled access."). In the instant case, as explained above, *supra* Section II(B)(2), Plaintiff has adequately alleged that the Restaurant does not comply with the California Building Code because the Restaurant has several architectural barriers. Compl. ¶¶ 9–13. Specifically, as Plaintiff's expert noted in the inspection and as Plaintiff alleged in her complaint, the Restaurant's tow away sign has no information in violation of California Building Code § 1129B.4, and the Restaurant's "no parking" sign on the surface of the ADA parking is faded in violation of California Building Code

---

[1] In Plaintiff's settlement with Somora, Plaintiff obtained injunctive relief for the following barriers: (1) "the interior pathway is crowded with tables and chairs" in violation of 1991 Standard § 5.3; (2) there was "no accessible seating at the counter" in violation of 1991 Standard § 5.1; and (3) there was no signature surface on the cashier counter in violation of 1991 Standards §§ 7.2(2) and 5.2. Compl. ¶ 11. Accordingly, Plaintiff does not seek injunctive relief as to these barriers. Plaintiff seeks injunctive relief only as to the barriers that were not resolved in the settlement with Somora.

§ 1129B.3. *Id.* ¶ 12; Altwal Decl. Exh. 2. Because Plaintiff has adequately alleged that the Restaurant violates the California Building Code, Plaintiff is entitled to an injunction order to remedy these architectural barriers. *Pickern*, 2002 WL 202442, at *9.

In sum, the Court concludes that Plaintiff is entitled to an injunction ordering Fasail and Chau to remedy the following architectural barriers: (1) the ADA parking lines are faded in violation of 1991 Standards § 4.6.3; (2) the ADA access lines are faded in violation of 1991 Standards § 4.6.3; (3) the international symbol of accessibility is faded in violation of 1991 Standards § 4.6.4; (4) the Restaurant's tow-away sign has no information in violation of California Building Code § 1129B.4; and (5) the Restaurant's "no parking" sign on the surface of the ADA parking is faded in violation of California Building Code § 1129B.3.

### 3. Attorney's Fees and Costs

The ADA permits a prevailing plaintiff to recover his or her reasonable attorney's fees, litigation expenses, and costs. 42 U.S.C. § 12205. To calculate attorneys' fees, courts multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In calculating the number of hours reasonably expended on the litigation, the Court excludes hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. In determining the hourly rate, the district court must "consider[] the experience, skill and reputation of the attorney requesting fees." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). For the purposes of determining the hourly rate, the relevant community is the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

In the instant case, Plaintiff requests $16,473.88 in attorney's fees and costs, including; (1) $3,271.50 in attorney's fees for attorney Irene Karbelashvili; (2) $8,825.00 in attorney's fees for attorney Irakli Karbelashvili; (3) $2,800 in fees for Bassam Atwal, Plaintiff's expert; and (4) $1,631.38 in other litigation costs. Mot. at 18. Below, the Court addresses in turn each category of attorney's fees and litgation costs.

Plaintiff requests a $325 hourly rate for attorney Irene Karbelashvili, who spent 9.9 hours

1    on the instant case, for a total of $3,271.50. *Id.* The Court concludes that a $325 hourly rate is

2    reasonable given the experience and skill of Irene Karbelashvili, who has been practicing law for

3    16 years and almost exclusively litigates ADA cases such as the instant case. Irene Karbelashvili

4    Decl. ¶ 2. Moreover, other courts in this district have concluded that a $325 rate was reasonable

5    given Irene Karbelashvili's experience and skill. *See Ridola*, 2018 WL 2287668, at *16; *Ketroser*

6    *v. UB SR LLC*, 2020 WL 4906068, at *10 (N.D. Cal. July 9, 2020), *report and recommendation*

7    *adopted*, 2020 WL 4904863 (N.D. Cal. Aug. 20, 2020).

8    As to whether Irene Karbelashvili's hours were reasonably expended, Irene Karbelashvili

9    submitted a declaration with the hours expended on the instant case, which included 2.8 hours of

10   investigation regarding the Restaurant's barriers; 3.3 hours drafting the Complaint; and 1.4 hours

11   attending the joint site inspection of the Restaurant. Irene Karbelashvili Decl. Exh. A. The Court

12   concludes that these hours were expended reasonably. However, the Court concludes that Plaintiff

13   is not entitled to attorney's fees for 1.1 hours of time that Irene Karbelashvili spent settling with

14   Somora, who has settled with Plaintiff, because Plaintiff was not the prevailing party with respect

15   to Somora. *See Volle*, 2020 WL 257056, at *4 (declining to award attorney's fees under the ADA

16   for work done with respect to a former co-defendant because the plaintiff and the co-defendant

17   settled, so the plaintiff did not prevail as to that co-defendant); *Greenfield Fresh, Inc. v. Berti*

18   *Produce-Oakland, Inc.*, 2014 WL 5700695, at *5 (N.D. Cal. Nov. 3, 2014) (denying motion for

19   attorney's fees for work performed with respect to former co-defendants, who were dismissed);

20   *see also Hensley*, 461 U.S. at 435 (stating that, where "counsel's work on one claim will be

21   unrelated to his work on another claim . . . [t]he congressional intent to limit awards to prevailing

22   parties requires that these unrelated claims be treated as if they had been raised in separate

23   lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim").

24   Accordingly, the Court concludes that Plaintiff is entitled to 8.8 hours, or a total of $2,860.00, for

25   attorney's fees for Irene Karbelashvili.

26   Plaintiff further requests a $250 hourly rate for attorney Irakli Karbelashvili, who sepnt

27   35.30 hours on the instant case, for a total of $8,825.00. The Court concludes that this hourly rate

28
Case No. 19-CV-00728-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

is reasonable given the experience and skill of Irakli Karbelashvili, who has been practicing law for 6 years and specializes in ADA cases such as the instant case. Furthermore, other courts in this district have approved a $250 hourly rate for Irakli Karbelashvili. *See Volle*, 2020 WL 257056, at *4; *Ketroser v. UB SR LLC*, 2020 WL 4906068, at *10 (N.D. Cal. July 9, 2020).

As to whether Irakli Karbelashvili's hours were reasonably expended, Irakli Karbelashvili submitted a declaration delineating how the hours were spent in the instant case. Irakli Karbelashvili's time was spent conferring with Plaintiff, drafting the complaint, attempting to effect service on Fasail and Chau, pursuing service by publication on Fasail and Chau, and drafting the motion for default judgment. Irakli Karbelashvili Decl. Exh. AA. However, the Court concludes that Irakli Karbelashvili is not entitled to attorney's fees for the 2.8 hours spent engaging in mediation with Somora because Plaintiff has not prevailed against Somora. *See Volle*, 2020 WL 257056, at *4 (declining to award attorney's fees under the ADA for work done with respect to a former co-defendant because the plaintiff and the co-defendant settled, so the plaintiff did not prevail as to that co-defendant); *Greenfield Fresh, Inc.*, 2014 WL 5700695, at *5 (denying motion for attorney's fees for work performed with respect to former co-defendants, who were dismissed); *see also Hensley*, 461 U.S. at 435 (stating that, where "counsel's work on one claim will be unrelated to his work on another claim . . . [t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim"). Accordingly, the Court concludes that Plaintiff is entitled to $8,125 in attorney's fees for the 32.5 hours that Irakli Karbelashvili spent on the instant case, excluding the time spent on the mediation with Somora.

Additionally, Plaintiff requests a $275 hourly rate for Bassam Altwal, Plaintiff's expert. Altwal is licensed by the State of California as a Certified Access Specialist ("CASp"); has a master's degree in architecture and 30 years of experience in architecture; and is the principal owner of Cal Accessibility. Altwal Decl. ¶ 2. Based on the experience and skill of Altwal, the Court concludes that a $275 hourly rate is reasonable. Indeed, other courts in this district have also

21

approved a $275 hourly rate for Altwal. *See Volle*, 2020 WL 257056, at \*5; *see also Ridola*, 2018 WL 228768, at \*16 (concluding that a $240 rate was reasonable for Altwal in a case resolved three years ago).

In addition, Altwal submits a declaration with the hours expended on the instant case, which included conducting the joint site inspection at the Restaurant, writing an inspection report, and researching building codes. Altwal Decl. Exh. 3. The Court concludes that these hours were expended reasonably. The Court further notes that, although multiplying Altwal's reasonable hourly rate by the hours expended on the instant case yields a total of $3,636.00, Plaintiff is only requesting $2,800. Thus, the Court grants Plaintiff's request for $2,800.00 for the services of Altwal.

Finally, Plaintiff requests $1,631.38 in other litigation costs. In her declaration, attorney Irene Karbelashvili states that her office expended a total amount of $1,631.38 in litigation costs in the instant case, including a $400.00 filing fee, $1,144.30 spent on serving documents, $50.00 spent obtaining public records through Lexis Nexis, and $37.08 spent on postage. Irene Karbelashvili Decl. ¶¶ 8, 10, 11. The Court concludes that these litigation costs are reasonable, particularly given the efforts Plaintiff made to effect service on Fasail and Chau, including over 10 attempts to personally serve Fasail and over 19 attempts to personally serve Chau. ECF Nos. 33-1, 33-7. Accordingly, the Court grants Plaintiff $1,631.38 in litigation costs.

Thus, the Court grants in part and denies in part Plaintiff's request for attorney's fees and costs. In total, the Court grants Plaintiff $15,416.38 in attorney's fees and costs, including $2,860.00 in attorney's fees for attorney Irene Karbelashvili; $8,125.00 in attorney's fees for attorney Irakli Karbelashvili; $2,800 in fees for Bassam Atwal, Plaintiff's expert; and $1,631.38 in other litigation costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment on Plaintiff's claims for violation of the ADA and UCRA. The Court DENIES Plaintiff's motion for default judgment on Plaintiff's claims for violation of Health & Safety Code § 19955 and violation

of the Disabled Persons Act.

The Court awards Plaintiff $4,000 in statutory damages and $15,416.38 in attorney's fees and costs. The Court enters an injunction ordering Fasail and Chau to remedy the following violations of the ADA at the Bite of Wyoming Restaurant in San Jose, California: (1) the ADA parking lines are faded in violation of 1991 Standards § 4.6.3; (2) the ADA access lines are faded in violation of 1991 Standards § 4.6.3; (3) the international symbol of accessibility is faded in violation of 1991 Standards § 4.6.4; (4) the Restaurant's tow-away sign has no information in violation of California Building Code § 1129B.4; and (5) the Restaurant's "no parking" sign on the surface of the ADA parking is faded in violation of California Building Code § 1129B.3.

**IT IS SO ORDERED.**

Dated: July 1, 2021

_Lucy H. Koh_
LUCY H. KOH
United States District Judge